750 F.2d 1422
 40 Fed.R.Serv.2d 1207
 UNITED STATES of America for the Use and Benefit of David G.
NEWTON, doing business under the assumed name and
style of David G. Newton Construction,
Plaintiff-Appellee,
v.
NEUMANN CARIBBEAN INTERNATIONAL, LTD., doing business as
Neumann Caribbean, et al., Defendants-Appellants.
 No. 83-1904.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted Dec. 13, 1983.
Decided Jan. 7, 1985.
 
 1
 Richard Corona, Richard Corona & Assoc., San Diego, Cal., for defendants-appellants.
 
 
 2
 Donald D. Harmata, Sacramento, Cal., for plaintiff-appellee.
 
 
 3
 Appeal from the United States District Court for the Northern District of California.
 
 
 4
 The prior opinion in this case, filed May 4, 1984, is withdrawn, and the attached opinion is substituted in its place.
 
 
 5
 With this substitution, the petition for rehearing is denied.
 
 
 6
 Before WALLACE and BOOCHEVER, Circuit Judges, and WYZANSKI,* Senior District Judge.
 
 WYZANSKI, Senior District Judge:
 
 7
 This is an appeal by Neumann Caribbean International, Ltd. (Neumann) and Safeco Insurance Company (Safeco) from a judgment of the District Court of the Northern District of California ordering Neumann and Safeco to submit to arbitration David G. Newton's (Newton) claim against Neumann arising out of a contract between them, and further ordering a stay of all other judicial proceedings in this case until such arbitration has been completed.
 
 
 8
 The principal issues raised in this appeal are (1) whether Neumann agreed that it would submit to arbitration the dispute between it and Newton as to the claim which Newton makes against it; (2) if so, whether the District Court had federal power over Newton's causes of action against Neumann and against Safeco; (3) if so, whether the District Court had judicial, that is equitable, jurisdiction to enforce the arbitration promise made by Neumann and (4) if so, whether the District Court in the circumstances of this case, abused its discretion in staying Neumann from proceeding with respect to its claims arising out of the prime contract or out of sub-contracts, whether the claim be against Newton or another, until after the arbitration be completed.
 
 
 9
 The following are the material facts.
 
 
 10
 Neumann entered into a contract with Round Valley Indian Housing Authority (RVIHA) on June 24, 1977, under which, in consideration of an agreed price to be paid by RVIHA, Neumann promised to furnish the materials and perform the labor for the construction of 70 single-family dwellings for RVIHA.
 
 24 C.F.R. Sec. 805.203(c) provides that:
 
 11
 ... The contractor shall be required to provide assurance in the form of 100 percent performance and payment bonds, or a lesser percentage or other security approved by HUD....
 
 
 12
 Neumann in paragraph 5 of its answer "affirmatively aver[s] that pursuant to applicable laws, Neumann Caribbean International, Ltd., a corporation as principal, and Safeco Company, as surety, executed and delivered to the Round Valley Indian Housing Authority, a payment and performance bond as required by the contract between the parties".
 
 
 13
 Then Neumann entered into a sub-contract made on July 8, 1977, and amended on July 14, 1977, with Newton under which the latter agreed to furnish certain of the labor and materials stipulated in the prime contract. That sub-contract, in providing for the arbitration of disputes, stated:
 
 
 14
 "That where arbitration of disputes is granted the Contractor under the terms of this contract on the project covered by this agreement, such right of arbitration shall be extended to the Sub-Contractor, and that in disputes arising between only the general Contractor and the Sub-Contractor, right of arbitration shall be extended to the Sub-Contractor even though the contract between the general Contractor and the owner contains no reference to arbitration."
 
 
 15
 On July 31, 1979, Newton filed in the Northern District of California a complaint against both Neumann and Safeco alleging that he had performed the sub-contract as amended and that Neumann had not paid him as agreed, and that he was entitled against both defendants to judgment for the amount due. In that complaint he also alleged that the District Court had federal jurisdiction of the cause of action pursuant to the Miller Act, 40 U.S.C. Secs. 270a through 270d.
 
 
 16
 On January 10, 1980, Neumann filed its answer, counterclaim, and third party complaint. Those pleadings alleged separate claims against Newton and against the Round Valley Indian Housing Authority--all arising in connection with the same construction project. In due season Safeco answered the complaint, Newton answered the counterclaim, and the Round Valley Indian Housing Authority answered the third party complaint.
 
 
 17
 On March 5, 1980, Newton filed a motion for arbitration and for a stay of action pending such arbitration. On June 6, 1980, the District Court, per Orrick, J., granted that motion and ordered arbitration of Newton's claim against Neumann and stayed other proceedings. From such arbitration and stay order Neumann appealed to this Court of Appeals. On March 16, 1982, this court dismissed the appeal because the District Court had no jurisdiction under the Miller Act, but simultaneously this court gave Newton leave to amend his complaint to allege any appropriate basis of federal jurisdiction.
 
 
 18
 On July 23, 1982, the District Court granted a motion, earlier filed by Newton, to permit him to amend his complaint so as to allege jurisdiction under 28 U.S.C. Sec. 1352. On August 11, 1982 Newton amended his complaint to allege such jurisdiction.
 
 
 19
 On March 31, 1983, the District Court, per Lynch, J., ordered that Newton's claims be referred to an arbitrator for arbitration and simultaneously ordered that all other judicial proceedings in this case be stayed until the arbitration be completed.
 
 
 20
 On April 20, 1983, Neumann and Safeco appealed that March 31, 1983 order to this court.
 
 
 21
 The first question for us to consider is whether as a consequence of its sub-contract with Newton, Neumann is under a duty to Newton to submit to arbitration the contract claim against it which Newton presents. We conclude that such duty exists. The sub-contract provides for arbitration "in disputes arising between only the general [i.e. the prime] Contractor and the Sub-Contractor". As to the contractual claim made by Newton against the prime contractor Neumann, we regard it as clear that only the two of them are parties to that particular dispute. We agree with District Judge Lynch that even if the rights of Newton cannot be vindicated without consideration of the owner's [the Round Valley Indian Housing Authority's] actions, this dispute is between only two parties, the prime contractor and the sub-contractor.
 
 
 22
 The second question is whether the District Court has federal jurisdiction of Newton's claim against Neumann as well as his claim against Safeco.
 
 
 23
 We conclude that federal jurisdiction has been conferred by 28 U.S.C. Sec. 1352 which provides that:
 
 
 24
 The district courts shall have original jurisdiction ... of any action on a bond executed under any law of the United States....
 
 
 25
 Under the prime contract Neumann agreed to post, and it did in fact post, a performance bond executed by Safeco. Those steps were taken pursuant to the requirement in 24 C.F.R. Sec. 805.203(c) that "The contractor shall be required to provide assurance in the form of 100 percent performance and payment bonds...". Hence the Safeco bond was, as stipulated in 28 U.S.C. Sec. 1352, executed under a "law of the United States". This clearly gave federal jurisdiction of sub-contractor Newton's bond claim against the surety.
 
 
 26
 Such steps also gave the District Court federal jurisdiction over the sub-contractor's joined action (based on a contract but not on a bond) against the prime contractor, although the words of section 1352 do not so state. Lasley v. U.S., 285 F.2d 98, 100 (5th Cir.1961); Autrey v. Williams and Dunlap, 210 F.Supp. 491 (W.D.La.1962); aff'd without consideration of the 28 U.S.C. Sec. 1352 jurisdictional point, 343 F.2d 730 (5th Cir.1965), 346 F.2d 1007 (5th Cir.1965); U.S., etc., Miss. Road Supply Co. v. H.R. Morgan, Inc., 542 F.2d 262, 266 (5th Cir.1976).
 
 
 27
 For the following reasons--admittedly not given in the cases just cited--we believe that those cases have reached a sound conclusion.
 
 
 28
 Where a sub-contractor has against the prime contractor and against the prime contractor's surety parallel claims arising out of the same set of transactions and presenting the same issues, and the sub-contractor files in a United States District Court having relevant jurisdiction a complaint based on his cause of action against the surety on the surety's federally required bond, then, under Fed.R.Civ.P. 19(a), the sub-contractor may join as a party in the action the prime contractor in connection with the sub-contractor's non-bond claim against the prime contractor inasmuch as the issues are substantially parallel. The reason is that at least a favorable judgment for the sub-contractor in the action, on the surety bonds, brought by him against the surety would (unlike a mere arbitration award such as is referred to in California Civil Code Sec. 2855) be binding upon the prime contractor in an action brought, on the sub-contract, against him by the sub-contractor. Restatement (Second) of Judgments Sec. 41 (1980). As in the inverse case where an indemnitor is bound by a judgment against the indemnitee [Id. Secs. 57-58], so in a case like the instant one, where the indemnitee may be bound by a judgment against the indemnitor, it will promote efficiency and economy and be plainly fair to authorize joinder of the sub-contractor's claim against the prime contractor as indemnitee with his claim against the surety as indemnitor. There is a congruence of interests of the surety and his principal in resisting adverse claims of the sub-contractor as a creditor of the prime contractor.
 
 
 29
 The same thought may be expressed more concisely.
 
 
 30
 Inasmuch as a favorable disposition of the sub-contractor's claim against the surety, made in the absence of the prime contractor may, "as a practical matter impede or impair" the principal contractor's interest, the joinder of the principal contractor is authorized by the express terms of Rule 19(a) which reads as follows:
 
 
 31
 (a) Persons to be Joined if Feasible. A person who is subject to service of process and whose joinder will not deprive the court of jurisdiction over the subject matter of the action shall be joined as a party in the action if (1) in his absence complete relief cannot be accorded among those already parties, or (2) he claims an interest relating to the subject of the action and is so situated that the disposition of the action in his absence may (i) as a practical matter impair or impede his ability to protect that interest or (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of his claimed interest. If he has not been so joined, the court shall order that he be made a party. If he should join as a plaintiff but refuses to do so, he may be made a defendant, or, in a proper case, an involuntary plaintiff. If the joined party objects to venue and his joinder would render the venue of the action improper, he shall be dismissed from the action.
 
 
 32
 We now address the question as to whether the District Court being seized of federal jurisdiction may, as a Court of the United States created under Article III of the United States Constitution and possessed of general equity jurisdiction, enforce a voluntary arbitration agreement.
 
 
 33
 Congress, by virtue of the United States Arbitration Act, 43 Stat. 883, as amended, 61 Stat. 669, 9 U.S.C. Secs. 1-3, has given to the federal courts the equitable power to enforce executory voluntary arbitral agreements when such agreements are part of "a transaction involving commerce". Sec. 2 of the United States Arbitration Act, 9 U.S.C. Sec. 2; opinion by Douglas, J., for the Supreme Court, in Bernhardt v. Polygraphic Co., 350 U.S. 198, 200-201, 76 S.Ct. 273, 274-275, 100 L.Ed. 199 (1956). Before the District Court all the parties and the judge sub silentio assumed that interstate commerce was so affected as to make the arbitration statute applicable. In light of the evidence that the construction of the 70 houses was dependent to some degree on raw materials supplied from out-of-state sources, the parties and the judge were probably warranted in their assumption, unchallenged in the District Court, that the arbitral agreement here involved arose out of a transaction involving commerce. See Liner v. Jafco, Inc., 375 U.S. 301, 306-307, 84 S.Ct. 391, 394-395, 11 L.Ed.2d 347 (1964); Local No. 438 Construction & General Laborers' Union v. Curry, 371 U.S. 542, 545 n. 2, 83 S.Ct. 531, 534 n. 2, 9 L.Ed.2d 514 (1963). Cf. Katzenbach v. McClung, 379 U.S. 294, 300-305, 85 S.Ct. 377, 381-384, 13 L.Ed.2d 290 (1964); Heart of Atlanta Motel, Inc. v. United States, 379 U.S. 241, 258-261, 85 S.Ct. 348, 358-360, 13 L.Ed.2d 258 (1964); Wickard v. Filburn, 317 U.S. 111, 63 S.Ct. 82, 87 L.Ed. 122 (1942).
 
 
 34
 The last question which we need to consider is whether it was an abuse of discretion for the District Court to have stayed, pending conclusion of the arbitration, all proceedings in the instant case, impliedly including proceedings in connection with the third party claim made by Neumann against the Round Valley Indian Housing Authority.
 
 
 35
 It seems to us clear that there were ample reasons for avoiding a duplication of effort in trying simultaneously, or even successively, the issues presented in Newton's original claim and in Neumann's third party claim. Considerations of economy and efficiency fully support the District Court's determination that the third party claim and other matters must await the final determination made in connection with the arbitration. We can sympathize with the prime contractor's view that it would rather have its claim against the Round Valley Indian Housing Authority decided before it had to meet the claim made against Neumann by Newton. But it was up to the district judge to determine which of the two claims should be first handled. It does not seem to us erroneous for the District Court to have preferred to allow the arbitration to take place first, particularly since the type of controversy here involved seems one well-suited to the informal, and often expeditious, proceedings which generally characterize arbitration. Judges are not the only persons who are capable of doing justice.
 
 
 36
 Affirmed.
 
 
 
 *
 Honorable Charles Edward Wyzanski, Jr., Senior United States District Judge, District of Massachusetts, sitting by designation