[No. 30498-4-I. Division One. May 17, 1993.]

ACF Property Management, Inc., et al, *Respondents,* v.
Dean A. Chaussee, et al, *Appellants.*

*Robert E. Ordal* and *Ordal & Jones,* for appellants.

*Rex D. Berry* and *Perkins Coie,* for respondents.

WEBSTER, C.J. — Dean Chaussee, several of his family members, and the family partnership named Emerald Glen Two Associates (collectively, Chaussee) appeal the trial court's order denying their motion to confirm the arbitrators' award entered against ACF Property Management, Inc. (ACF).[1] Chaussee contends that (1) Judge Schindler erroneously interpreted the arbitration clause in the parties' agreement to limit arbitration to claims valued at $200,000 or less; (2) Judge Schindler should have confirmed the arbitrators' award because ACF failed to prove the prejudice required to vacate the award under RCW 7.04.160(4); (3) ACF waived any right it had to challenge Judge Holman's earlier ruling staying litigation pending arbitration; and (4) ACF was bound by the arbitrators' interpretation of the scope of the arbitration clause. ACF cross-appeals, arguing that Judge Holman erred by entering the order staying litigation and Judge Schindler erred by refusing to expressly vacate the arbitrators' award. We affirm.

In July 1989, ACF exercised its option to purchase Emerald Glen Two Associates, a Washington partnership owned by Chaussee. Chaussee had created the partnership in order to build an apartment complex in a 2-phased construction project. ACF's purchase involved two separate agreements, one for each phase of construction, but only the "Phase II" agreement is pertinent to this appeal.

Pursuant to that agreement, ACF paid Chaussee $150,000 and placed another $250,000 in escrow. That total amount of $400,000 was intended to serve as liquidated damages if ACF failed to purchase the property as agreed. Once the Phase II construction was complete, ACF would make an initial down payment and the parties would take various steps to close

---

[1]Although Alan C. Fox, the owner of ACF, is named as a party to this appeal, the arbitrators dismissed Fox as a party to the arbitration and specifically stated that the award entered was "solely against ACF".

the transaction. Construction would be deemed complete when, among other things, each party's architect certified that the project was substantially completed. The Phase II agreement also included an arbitration clause which read in pertinent part:

> All claims and counterclaims between the parties arising out of or relating to a dispute as to the date or fact of final completion of the Improvements or any portion thereof, including disputes relating to the completion of construction according to the Plans and Specifications, will be decided by arbitration. . . . All demands for arbitration and all answering statements thereto which include any monetary claim must contain a statement that the total sum or value in controversy as alleged by the party making such demand or answering statement is not more than TWO HUNDRED THOUSAND DOLLARS ($200,000.00), exclusive of interest and costs. The arbitrators will not have jurisdiction, power or authority to consider, to make findings, except in denial of their own jurisdiction, or to render a monetary award in response to any claim against any party in excess of such amount. The arbitrators shall have no jurisdiction to hear any claim for specific performance or injunctive relief or any claim concerning the title to the Property and/or to the Improvements.

In July 1990, Chaussee's architect issued his certificate of substantial completion, but Chaussee allegedly was unable to determine from ACF whether its architects had inspected the construction project or whether they intended to issue their certificate. Consequently, on August 9, 1990, Chaussee's attorney wrote to ACF and demanded that the transaction be closed on August 20, 1990. ACF refused to close the deal, claiming that the construction was not complete and that Chaussee had repudiated the contract by the August 9 letter.

Subsequently, ACF sued Chaussee in superior court for repudiating the contract and sought repayment of the $150,000 it initially paid Chaussee, the $250,000 held in escrow, and approximately $52,000 also held in escrow for various change orders.[2] ACF also sought additional damages of more than $2

---

[2]The exact amount of money in escrow for the change orders is not clear from the record before us. The arbitrators' award refers to the amount as "more than $52,000", while in one of its pleadings ACF indicated that the amount is $56,000.

million flowing from Chaussee's alleged breach of contract. Chaussee answered ACF's complaint and, pursuant to RCW 7.04.030,[3] filed a motion to stay the legal proceedings pending arbitration. ACF opposed that motion, arguing that the arbitration clause in the parties' contract limited arbitrable matters to claims of not more than $200,000.

On November 6, 1990, Judge Holman granted Chaussee's motion and entered the following findings:

> 2.2 Paragraph 5.3 of the Agreement contains an arbitration clause. This clause covers all claims and counterclaims relating to completion of the Improvements described in the Agreement.
>
> 2.3 Defendants contend, and plaintiffs in their memorandum in support of summary judgment admit, that the issue in the pending summary judgment motion involves claims arising out of and relating to the completion of the Improvements.
>
> 2.4 Final completion of the Improvements is an issue in this case.

Judge Holman's conclusions were as follows:

> 3.1 The arbitration clause in the Agreement is valid and binding on the parties.
>
> 3.2 There is an issue involved in the instant action which is referrable [sic] to arbitration under the terms of the Agreement.
>
> 3.3 The issues raised by the plaintiffs in their proceedings and their motion for summary judgment are appropriate under the Agreement for submission to arbitration.

Immediately following entry of Judge Holman's order, ACF filed a demand for arbitration. Chaussee moved for an order striking the arbitration demand because it did not comply with the requirement of the arbitration clause that

> [a]ll demands for arbitration and all answering statements thereto which include any monetary claim must contain a

---

[3]RCW 7.04.030 reads:

**"Stay of action pending arbitration.** If any action for legal or equitable relief or other proceedings be brought by any party to a written agreement to arbitrate, the court in which such action or proceeding is pending, upon being satisfied that any issue involved in such action or proceeding is referable to arbitration under such agreement, shall, on motion of any party to the arbitration agreement, stay the action or proceeding until an arbitration has been had in accordance with the agreement."

statement that the total sum or value in controversy as alleged by the party making such demand or answering statement is not more than TWO HUNDRED THOUSAND DOLLARS ($200,000.00), exclusive of interest and costs.

Chaussee alternatively requested that the court enter an order limiting ACF's damages to $200,000 if it prevailed at arbitration. Judge Dore denied Chaussee's motion and arbitration proceeded.

A panel of three arbitrators initially considered the scope of the arbitration clause. In a letter to the arbitrators, ACF objected to arbitration on the ground that the arbitration clause in the Phase II agreement limited arbitrable matters to claims not exceeding $200,000. ACF nevertheless asked the arbitrators to find that damages in the matter exceeded $200,000 and to refer the issue of damages to the superior court.[4] The arbitrators ultimately interpreted the arbitration clause as follows:

(i) the arbitrators have no jurisdiction to award damages in excess of $200,000;

(ii) after ruling on the liability of the parties, if the arbitrators find that the actual damages exceed $200,000, they shall award damages up to $200,000 and shall refer the action back to the King County Superior Court which can award any damages in excess of $200,000; and

(iii) the arbitration clause does not contain a $200,000 limit or cap on damages.

On July 9, 1991, after 7 days of hearings, the arbitrators concluded that Chaussee had not repudiated the contract. They awarded him $200,000, noting that their jurisdiction prohibited them from awarding more than that amount. In their opinion and award, the arbitrators asked the Superior Court to enter judgment for the remaining amount of liquidated damages pursuant to the contract ($200,000), plus the

---

[4] Although ACF has alleged in its brief that Judge Holman orally ruled that the arbitrators should refer the issue of damages to the superior court if the damages exceeded $200,000, the record does not include a transcript of that oral ruling. ACF's citation to the record is merely to its letter to the arbitrators explaining Judge Holman's oral ruling. Neither Judge Holman's order staying litigation nor Judge Dore's order denying Chaussee's motion to strike discussed the scope of the arbitration clause.

money held in escrow for the change orders.[5] The arbitrators also awarded Chaussee attorney fees and costs of approximately $100,000.

In September 1991, Chaussee filed a motion, which ACF opposed, asking the Superior Court to confirm the arbitrators' award. Judge Schindler denied the motion on the ground that the arbitration clause precluded arbitration for claims valued at more than $200,000 and Judge Holman erred by holding otherwise. Judge Schindler consequently ordered the parties to schedule a trial date. In addition, without comment, Judge Schindler crossed out language in ACF's proposed order that would have expressly vacated the arbitrators' award and subsequent order. Chaussee's motion for reconsideration was denied. He now appeals Judge Schindler's order, and ACF cross-appeals.

The key issue before us is whether Judge Schindler erred by refusing to confirm the arbitrators' award. Chaussee contends that the award should have been confirmed under RCW 7.04.150 because there was no statutory basis for refusing to confirm it.

In Washington, arbitration "depends for its existence and for its jurisdiction upon the parties having contracted to submit to it, and upon the arbitration statute [RCW 7.04]." *Thorgaard Plumbing & Heating Co. v. County of King*, 71 Wn.2d 126, 132, 426 P.2d 828 (1967). In addition to governing arbitration proceedings, RCW 7.04 governs superior court and appellate court review of those proceedings. *Barnett v. Hicks*, 119 Wn.2d 151, 154, 829 P.2d 1087 (1992). A superior court has the limited power of either confirming, vacating, modify-

---

[5]In a subsequent order dated September 4, 1991, the arbitrators clarified the award as follows:

"[5.b.] Of the $400,000 in liquidated damages awarded to defendants, $150,000 was received by the defendants at the time of 50% completion of Phase II, so the net award for liquidated damages is $250,000 (plus interest as stated in paragraph 7 below). This does not include the change order funds held in escrow.

". . . .

"7. Defendants' motion for prejudgment interest on the $250,000 held in escrow is denied; however, defendants shall be paid the interest which has accrued on the $250,000 in the escrow account since August 20, 1990 [the closing date originally set by Chaussee]."

ing, or correcting an arbitration award as set forth in RCW 7.04.150-.170. *Barnett*, 119 Wn.2d at 156. Appellate court review of an arbitration award "is limited to that of the court which confirmed, vacated, modified or corrected that award." *Barnett*, 119 Wn.2d at 157. Further, judicial scrutiny of an arbitration award does not include review of the arbitrator's decision on the merits. *Westmark Properties, Inc. v. McGuire*, 53 Wn. App. 400, 402, 766 P.2d 1146 (1989).

 Although public policy strongly favors arbitration as a remedy for settling disputes (*see, e.g., Detweiler v. J.C. Penney Cas. Ins. Co.*, 110 Wn.2d 99, 112-13, 751 P.2d 282 (1988); *Herzog v. Foster & Marshall, Inc.*, 56 Wn. App. 437, 443, 783 P.2d 1124 (1989)), arbitration "should not be invoked to resolve disputes that the parties have not agreed to arbitrate." *King Cy. v. Boeing Co.*, 18 Wn. App. 595, 603, 570 P.2d 713 (1977). To the contrary,

> [a]n agreement for the submission of a dispute to arbitration defines and limits the issues to be decided. *The authority of the arbitrator is wholly dependent upon the terms of the agreement of submission. The arbitration award must concern only those matters included within the agreement for submission and must not exceed the powers established by the submission.*

(Footnote omitted. Italics ours.) *Sullivan v. Great Am. Ins. Co.*, 23 Wn. App. 242, 246, 594 P.2d 454 (1979). *Cf. Allied Fid. Ins. Co. v. Ruth*, 57 Wn. App. 783, 791, 790 P.2d 206 (1990) ("a judgment is void for lack of jurisdiction and is assailable at any time").

 Turning to the facts of the present case, we must initially decide whether Judge Schindler correctly interpreted the parties' arbitration clause to preclude arbitration of the issues raised by ACF. *See Local Union 77, Int'l Bhd. of Elec. Workers v. PUD 1*, 40 Wn. App. 61, 63 n.2, 696 P.2d 1264 (1985) (a reviewing court must make an independent determination of whether an issue is arbitrable because arbitrability is a matter of law). Although the first sentence of the arbitration clause broadly purports to require arbitration for "[a]ll claims" arising out of or relating to final completion of the construction, the clause also states that "[t]he arbitra-

tors will not have jurisdiction, power or authority to consider . . . any claim against any party in excess of [$200,000]." See page 915. Thus, the words "[a]ll claims" in the first sentence are qualified by the subsequent language of the clause.

Because the issues ACF presented involved alleged damages of far more than $200,000, Judge Schindler correctly held that the arbitrators had no authority under the parties' agreement to consider the issues submitted to arbitration.[6] Consequently, Judge Holman erred by granting Chaussee's motion to stay the litigation. RCW 7.04.030 authorizes a trial court to grant a motion to stay an action pending arbitration, but only "upon being satisfied that any issue involved in such action or proceeding is referable to arbitration under [the arbitration agreement]". The issues decided in this arbitration were clearly not referable to arbitration under the parties' agreement.

 Because the arbitrators had no authority under the parties' agreement to consider the issues raised in the arbitration, the arbitrators' award must be deemed void. *See Thorgaard*, 71 Wn.2d at 132 (arbitration in Washington "depends for its existence *and for its jurisdiction* upon the parties having contracted to submit to it, and upon the arbitration statute" (italics ours)); *Sullivan*, 23 Wn. App. at 246 ("[an] arbitration award must concern only those mat-

---

[6]We are not persuaded by the three other interpretations of the arbitration clause which Chaussee has suggested. His argument that the $200,000 limit in the clause was a cap on the total amount of damages is untenable because the parties had agreed to liquidated damages of $400,000. Similarly, the unambiguous language of the clause does not permit Chaussee's second suggested interpretation that the arbitrators had "partial jurisdiction" or jurisdiction over liability only. Finally, Chaussee suggests that the clause can be interpreted to require arbitration of all claims involving the completion of construction but also limit the arbitrators' jurisdiction to determining liability and awarding $200,000 in damages. Any additional damages would be determined by the superior court. Understandably, the arbitrators adopted that third interpretation of the clause. They had no choice but to do so when faced both with Judge Holman's unchallenged order concluding that the issues raised by ACF were arbitrable *and* with the language of the clause depriving the arbitrators of jurisdiction "to render a monetary award in response to any claim . . . in excess of [$200,000]." Nevertheless, the clause, as Judge Schindler correctly interpreted it, precluded arbitration for all claims exceeding $200,000.

ters included within the agreement for submission and must not exceed the powers established by the submission"). A court has no jurisdiction to enter a void judgment (*see Allied Fid.*, 57 Wn. App. at 791) and, likewise, has no jurisdiction to confirm a void arbitration award. As RCW 7.04.150 provides:

> At any time within one year after the award is made, . . . any party to the arbitration may apply to the court for an order confirming the award, and the court shall grant such an order *unless the award is beyond the jurisdiction of the court*, or is vacated, modified, or corrected, as provided in RCW 7.04-.160 and 7.04.170.

(Italics ours.) Under the facts of this case, Judge Schindler correctly refused to confirm the arbitrators' award.

■ Although Chaussee argues that ACF waived any right it had to challenge Judge Holman's order, we disagree. ACF objected to Chaussee's motion to stay the litigation pending arbitration and, upon being compelled to arbitrate, specifically challenged the arbitrators' power to decide the issues presented. The only other option ACF could have exercised would have been to seek discretionary review of Judge Holman's order pursuant to RAP 2.3.[7] While seeking discretionary review may have resulted in the reversal of Judge Holman's award, which in turn would have prevented the parties from participating in needless arbitration, we cannot now guess at how a panel of judges actually would have ruled on a motion for discretionary review.

Regardless, ACF was not compelled to seek such review. According to *Teufel Constr. Co. v. American Arbitration Ass'n*, 3 Wn. App. 24, 27, 472 P.2d 572 (1970), ACF was assured of

---

[7]Given existing case law, ACF could not directly appeal Judge Holman's order staying the litigation pending arbitration. *See All-Rite Contracting Co. v. Omey*, 27 Wn.2d 898, 181 P.2d 636 (1947); *Teufel Constr. Co. v. American Arbitration Ass'n*, 3 Wn. App. 24, 25, 472 P.2d 572 (1970). As *Teufel* stated, "[i]t has been definitely settled by the Supreme Court of this state that an order compelling arbitration is not final and therefore is not 'appealable". *Teufel*, at 25 (citing *All-Rite*). We note that a reexamination of the *All-Rite* holding appears to be warranted if the proper circumstances are presented in a future appeal. *See Herzog*, 56 Wn. App. at 444 n.3; *Kraus v. Grange Ins. Ass'n*, 48 Wn. App. 883, 884 n.1, 740 P.2d 918 (1987).

the opportunity to challenge rulings that were not final and appealable orders entered prior to arbitration. *See also All-Rite Contracting Co. v. Omey*, 27 Wn.2d 898, 900-01, 181 P.2d 636 (1947). In *Teufel*, the court considered facts similar to those in the present case. There, the appellants sought an order from the trial court staying arbitration of the parties' dispute on the ground that the dispute was not subject to arbitration under the parties' contracts. The trial court denied that motion and granted the opposing party's motion to compel arbitration.

On appeal, the appellants argued that if the trial court's order were affirmed, they would be precluded from later challenging that court's decision that the issues were arbitrable. *Teufel*, 3 Wn. App. at 25. The Court of Appeals affirmed, citing the holding of *All-Rite* that an order compelling arbitration is not final and therefore not appealable. However, the court also stated that

> [o]n appeal, *appellants may challenge the jurisdiction of the trial court to entertain the arbitration proceedings* for lack of a binding arbitration agreement or *because the disputes are not arbitrable under the agreement.*

(Italics ours.) *Teufel*, 3 Wn. App. at 27.

In a case like the present one, where ACF objected to the arbitration but was nevertheless compelled to submit issues to arbitration that were not arbitrable under the parties' agreement, ACF was entitled to challenge the validity of the arbitrators' award when Chaussee moved to have it confirmed. *See* RCW 7.04.150; *Teufel*, 3 Wn. App. at 27; *see also W.A. Botting Plumbing & Heating Co. v. Constructors-Pamco*, 47 Wn. App. 681, 686 n.3, 736 P.2d 1100 (1987) (in dictum, the court noted that a party compelled to submit the issue of jurisdiction to arbitration, as opposed to submitting that issue voluntarily, may challenge jurisdiction in a subsequent motion to vacate or modify). Once the trial court determines that an arbitration award is void and, thus, beyond its jurisdiction to confirm, the court's inquiry ends. RCW 7.04.150 does not require the court to further determine whether any grounds exist for vacating, modifying, or

correcting the award. *See* RCW 7.04.150 (the court shall grant an order confirming the award "unless the award is beyond the jurisdiction of the court, *or* is vacated, modified, or corrected" (italics ours)). Hence, Judge Schindler did not err by refusing to vacate the award.

Having decided that the initial order staying the litigation pending arbitration was erroneous, we affirm the trial court's judgment denying the motion to confirm the arbitrators' award and denying the motion to vacate.

BAKER and KENNEDY, JJ., concur.

Review denied at 122 Wn.2d 1019 (1993).